PEOPLE v DIXON

Docket No. 92940. Submitted February 10, 1987, at Lansing. Decided
July 7, 1987.

Donald E. Dixon was convicted following a jury trial in .the
Oakland Circuit Court of first-degree criminal sexual conduct,
second-degree criminal sexual conduct, breaking and entering
an occupied dwelling with intent to commit larceny, and unlaw-
fully driving away a motor vehicle. The trial court, Fred M.
Mester, J., sentenced defendant to imprisonment for from 25 to
150 years, from 10 to 15 years, from 10 to 15 years, and from 3
to 5 years for the respective convictions. Defendant appeals.

The Court of Appeals *held:*

1. The Court of Appeals declined to adopt a parent-child
testimonial privilege. The admission of the testimony of defen-
dant's mother was not error.

2. The admission of defendant's mother's testimony concern-
ing her identification to a police officer of the items found in
defendant's room, even if the testimony constituted hearsay
evidence, was harmless error. The substance of the testimony
was cumulative of that given by Officer Timmons.

3. The trial court did not err when it allowed Officer Tim-
mons to testify about the victim's identification of defendant at
a corporeal lineup. The testimony was cumulative of the declar-
ant's testimony and its admission was harmless.

4. The trial court's jury instruction concerning impeachment
of the complainant by a prior inconsistent statement was
proper.

5. The trial court properly declined to instruct the jury on
the cognate lesser included offense of receiving and concealing

REFERENCES

Am Jur 2d, Criminal Law, §§ 538, 551, 555.
Am Jur 2d, Evidence, § 590.
Am Jur 2d, Jury, § 201.
Am Jur 2d, Witnesses, §§ 141 *et seq.*
See the annotations in the Index to Annotations under Privileges
and Immunities.
See the annotations in the Index to Annotations under Sentence
and Punishment.

stolen property worth more than $100, as it applied to the charge of breaking and entering an occupied dwelling with intent to commit larceny.

6. Defendant's sentence of from 25 to 150 years for first-degree criminal sexual conduct does not shock the conscience of the Court of Appeals.

Affirmed.

1. EVIDENCE — WITNESSES — PARENT AND CHILD — TESTIMONIAL PRIVILEGES.

A parent-child testimonial privilege is not recognized in Michigan courts.

2. EVIDENCE — EVIDENTIARY PRIVILEGES.

All evidentiary privileges are exceptional and are therefore to be discouraged; the investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges as privileges do not further the ascertainment of truth but, rather, permit the concealment of relevant, reliable information.

3. EVIDENCE — EVIDENTIARY PRIVILEGES.

Evidentiary privileges are not lightly created nor expansively construed, for they are in derogation of the search for truth; the exclusion of relevant evidence by the creation of a privilege is warranted only if the resulting public good transcends the normally predominant principle of using all rational means for ascertaining truth.

4. EVIDENCE — HARMLESS ERROR.

The erroneous admission of testimony may be found to be harmless error where the testimony is cumulative of other properly admitted testimony.

5. CRIMINAL LAW — JURY INSTRUCTIONS — COGNATE LESSER OFFENSES.

The failure to instruct on a cognate lesser offense is error requiring reversal where the evidence supports a conviction of the cognate lesser offense and the defendant requests an instruction thereon.

6. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES — APPEAL.

It is within a sentencing judge's discretion to exceed the sentencing guidelines range in appropriate cases; however, the sentence imposed must not shock the conscience of the Court of Appeals in order to withstand appellate review.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Margaret G. Horenstein,* Assistant Prosecuting Attorney, for the people.

*Lizza & Mulcahy, P.C.* (by *David M. Lawson*), for defendant.

Before: HOOD, P.J., and MACKENZIE and R. M. PAJTAS,* JJ.

MACKENZIE, J. Following a jury trial, defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1); MSA 28.788(2)(1), second-degree criminal sexual conduct, MCL 750.520c(1); MSA 28.788(3)(1), breaking and entering an occupied dwelling with intent to commit larceny, MCL 750.110; MSA 28.305, and unlawfully driving away a motor vehicle, MCL 750.413; MSA 28.645. He was sentenced to imprisonment for from 25 to 150 years, from 10 to 15 years, from 10 to 15 years, and from 3 to 5 years for the respective convictions. Defendant now appeals as of right and we affirm.

Defendant's convictions arose out of an October 19, 1983, incident at the residence of complainant. The victim testified that she stopped home on her way to a business appointment at approximately 5:20 P.M. Defendant was standing in her living room. A struggle ensued and defendant put a knife up to her throat. Defendant asked what time the victim's husband, "Ron," got home and then placed a jacket over her face. He proceeded to place his finger or fingers in her vagina and to attempt, unsuccessfully, to insert his penis into her vagina. Defendant then took the keys to the car the victim had been driving and drove away.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The Oak Park police inspected the victim's home, inventoried missing objects and collected fingerprint evidence. The first-floor nursery window, where defendant had apparently entered, was damaged. The cords of both telephones in the house had been removed. A camera and flash, the victim's briefcase and wallet, her eyeglasses, a gold chain and a tan pair of her husband's shoes were missing. A latent print taken from a metal box in the den matched defendant's palm print.

Defendant's mother, Winnie Dixon, was called as a prosecution witness. She testified that she found a pair of tan shoes, a briefcase and a set of keys in defendant's room. These items were turned over to the police and were identified as objects missing from the victim's house. According to Mrs. Dixon, defendant told her that he had purchased the shoes from a friend. He also told her that a second person was involved in the incident.

On appeal, defendant urges this Court to recognize a parent-child testimonial privilege and hold that Winnie Dixon was barred from testifying against defendant at his trial. The issue is one of first impression in this state.

In recent years, the subject of establishing a parent-child testimonial privilege has received considerable scholarly attention. See Coburn, *Child-parent communications: Spare the privilege and spoil the child,* 74 Dick L R 599 (1969); Stanton, *Child-parent privilege for confidential communications: An examination and proposal,* 16 Fam L Q 1 (1982); Comment, *From the mouths of babes: Does the constitutional right of privacy mandate a parent-child privilege?,* 1978 BYU L R 1002 (1978); Comment, *The child-parent privilege: A proposal,* 47 Fordham L R 771 (1979); Comment, *Confidential communication between parent and child: A constitutional right,* 16 San Diego L R 811 (1979);

Note, *Recognition of a parent-child testimonial privilege*, 23 St Louis U L J 676 (1979); Note, *Questioning the recognition of a parent-child testimonial privilege*, 45 Albany L R 142 (1980); Note, *Parent-child loyalty and testimonial privilege*, 100 Harv L R 910 (1987); Comment, *Parent-child testimonial privilege: An absolute right or an absolute privilege?*, 11 U Dayton L R 709 (1986); Comment, *A parent-child testimonial privilege: Its present existence, whether it should exist, and to what extent*, 13 Cap U L R 555 (1984); Kraft, *The parent-child testimonial privilege: Who's minding the kids?*, 18 Fam L Q 505 (1985); Note, *The judicial development of the parent-child testimonial privilege: Too big for its britches?*, 26 Wm & Mary L R 145 (1984); Comment, *Underprivileged communications: The rationale for a parent-child privilege*, 36 Southwestern L J 1175 (1983); Kandoian, *The parent-child privilege and the parent-child crime: Observations on* State v Delong *and In re Agosto*, 36 Me L R 59 (1984); Note, *Parent-child testimonial privilege: Preserving and protecting the fundamental right to family privacy*, 52 Cinn L R 901 (1983).

The parent-child testimonial privilege is currently recognized by the federal district court of Nevada and by certain state courts in New York. In Nevada, the privilege was recognized in *In re Agosto*, 553 F Supp 1298, 1325 (D Nev, 1983), holding the privilege encompasses not only confidential communications, but bars any testimony by a parent against a child, or vice versa, unless the witness waives the privilege. In New York, the privilege is less extensive, barring only confidential communications made by a child of any age to his parent, or vice versa. See *People v Fitzgerald*, 101 Misc 2d 712; 422 NYS2d 309 (1979), and *In re A & M*, 61 AD2d 426; 403 NYS2d 375 (1978). But see also *In the Matter of Harry R*, 134 Misc 2d

404; 510 NYS2d 792 (1986). At least two jurisdictions have enacted some form of parent-child privilege by statute. See Idaho Code § 9-203(7) (Supp 1987) and Minnesota Statutes § 595.02(1)(i)

The vast majority of jurisdictions have rejected the adoption of the parent-child testimonial privilege, however. See *In re Terry W,* 59 Cal App 3d 745; 130 Cal Rptr 913 (1976); *Marshall v Anderson,* 459 So 2d 384 (Fla App, 1984); *People v Sanders,* 99 Ill 2d 262; 457 NE2d 1241 (1983); *Cissna v State,* 170 Ind App 437; 352 NE2d 793 (1976); *State v Gilroy,* 313 NW2d 513 (Iowa, 1981); *State v Delong,* 456 A2d 877 (Me, 1983); *Three Juveniles v Commonwealth,* 390 Mass 357; 455 NE2d 1203 (1983), cert den 465 US 1068; 104 S Ct 1421; 79 L Ed 2d 746 (1984); *Cabello v State,* 471 So 2d 332 (Miss, 1985); *Missouri v Bruce,* 655 SW2d 66 (Mo App, 1983); *In the Matter of Gibson,* 79 Ore App 154; 718 P2d 759 (1986); *In re Frances J,* 456 A2d 1174 (RI, 1983); *DeLeon v State,* 684 SW2d 778 (Tex App, 1984); *In re Grand Jury Subpoena of Santarelli,* 740 F2d 816 (CA 11, 1984); *United States v Jones,* 683 F2d 817 (CA 4, 1982); *In re Grand Jury Proceedings (Starr),* 647 F2d 511 (CA 5, 1981); *United States v Penn,* 647 F2d 876 (CA 9, 1980); *United States v Davies,* 768 F2d 893 (CA 7, 1985), cert den — US —; 106 S Ct 533; 88 L Ed 2d 464 (1985).

We similarly decline to adopt a parent-child testimonial privilege. Initially, we note that the exclusion of evidence by evidentiary privileges is largely governed by statute. See MRE 101, Committee Note. Accordingly, we believe that recognition of a new privilege is best deferred to the Legislature.

Perhaps more fundamentally, however, we premise our decision on the notion that "*all privileges . . . are exceptional,* and are therefore to be

[discouraged]. . . . The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges." 8 Wigmore, Evidence (McNaughton rev, 1961), § 2192, p 73. As privileges do not further the ascertainment of truth but, rather, permit the concealment of relevant, reliable information, courts have been reluctant to expand or create new privileges in the absence of compelling reasons. *In re Dinnan,* 661 F2d 426, 429-430 (CA 5, 1981), cert den 457 US 1106 (1982). In addressing the issue of the judicial establishment of new privileges, the United States Supreme Court has stated that "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v Nixon,* 418 US 683, 710; 94 S Ct 3090; 41 L Ed 2d 1039 (1974). The exclusion of relevant evidence by the creation of a privilege is warranted only if the resulting public good transcends the normally predominant principle of using all rational means for ascertaining truth. *Trammel v United States,* 445 US 40, 50; 100 S Ct 906; 63 L Ed 2d 186 (1980). Applying these principles, we are not persuaded that the exclusion of a parent's or child's testimony would promote "sufficiently important interests" so as "to outweigh the need for probative evidence in the administration of criminal justice." *Trammel, supra,* 445 US 50-51. In the circumstances of this case, the state's interest in obtaining all relevant information concerning the sexual assault and robbery of a woman in her own home must predominate over generalizations favoring the preservation of the American family through barring the testimony of a parent or child. See *Three Juveniles, supra,* 390 Mass 364.

Defendant's remaining arguments require only

brief discussion. Defendant claims that Mrs. Dixon's testimony concerning her identification to police officer Mary Timmons of the items found in defendant's room constituted inadmissible hearsay. Assuming without deciding that the testimony constituted hearsay evidence, its admission constituted harmless error. The substance of the testimony was cumulative of that given by Officer Timmons. See *People v Prophet,* 101 Mich App 618, 624; 300 NW2d 652 (1980).

We also reject defendant's claim that the trial court erred when it allowed Officer Timmons to testify about the victim's identification of defendant at a corporeal lineup. Defendant claims that this testimony constituted inadmissible hearsay under MRE 801(d)(1). To the extent that Timmons testified that the victim made her identification "immediately," defendant's hearsay challenge clearly fails; that testimony did not repeat an out-of-court statement. As regards the officer's repeating the actual words of the victim or reporting her assertive conduct, there is a split of authority in this Court. Some panels have held that while MRE 801(d)(1) allows the declarant (in this case, the victim) to testify as to his or her prior identification of a defendant, it does not allow a third party to testify about the declarant's identification of defendant; however, it does allow the third party to testify about the facts and circumstances surrounding that prior identification. *People v Turner,* 120 Mich App 23, 38; 328 NW2d 5 (1982), lv den 417 Mich 1064 (1983); *People v Price,* 112 Mich App 791, 801-803; 317 NW2d 249 (1982), lv den 414 Mich 946 (1982); *People v Mock,* 108 Mich App 384, 387-388; 310 NW2d 390 (1981); *People v Prophet, supra,* pp 620-624; *People v Horton,* 98 Mich App 62, 71; 296 NW2d 184 (1980); *People v Hoerl,* 88 Mich App 693, 701-702, n 5; 278 NW2d

721 (1979); *People v Washington,* 84 Mich App 750, 755-756; 270 NW2d 511 (1978). Other panels have held that MRE 801(d)(1) allows a third party to testify concerning an identification of a defendant at a lineup. *People v Beam,* 125 Mich App 289; 335 NW2d 684 (1983), lv den 418 Mich 858 (1983), reh den 418 Mich 858 (1984); *People v McConnell,* 124 Mich App 672, 679-680; 335 NW2d 226 (1983); *People v Turner,* 116 Mich App 421; 323 NW2d 425 (1982); *People v Adams,* 92 Mich App 619; 285 NW2d 392 (1979), lv den 408 Mich 890 (1980). Assuming, arguendo, that defendant correctly argues that the former line of cases is correct, we find that the officer's testimony was cumulative of the declarant's testimony. Therefore, its admission was harmless. *Turner, supra; Price, supra; Mock, supra; Prophet, supra; Washington, supra.*

Defendant contends that the trial court erred in instructing the jury concerning impeachment by a prior inconsistent statement. The court instructed the jury in pertinent part:

> During the course of this trial there has been some evidence tending to show that one of the witnesses [the victim] made an earlier statement that was inconsistent with testimony made during the course of the trial. *The prior inconsistent statement was regarding who removed her panty hose.* This statement is not evidence which you can consider to satisfy or prove any of the elements of the crime charged since it was not made under oath during the course of this trial.

Defendant maintains that this instruction prejudicially removed from the jury's consideration the question whether there was an inconsistency in the victim's trial testimony and her preliminary examination testimony concerning defendant's attempt to insert his penis into her vagina. Defen-

dant's argument fails for the reason that the record does not support a finding of the existence of a prior inconsistent statement on this point. The victim was unequivocal at both the preliminary examination and at trial that it was defendant's penis which she felt him try to insert into her vagina. The instruction was proper as given.

Defendant contends that the trial court erred by refusing to give a requested instruction on the cognate lesser included offense of receiving and concealing stolen property worth more than $100, as it applied to Count III of the information, charging breaking and entering an occupied dwelling with intent to commit larceny. Where the evidence at trial supports a conviction of a cognate lesser offense, and the defendant requests an instruction on the lesser offense, failure to honor the request constitutes error requiring reversal. *People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975), reh den 396 Mich 976 (1976). Defendant maintains that because there was evidence to support a conviction for the lesser offense of receiving and concealing stolen property worth more than $100 his breaking and entering conviction must be reversed. We disagree. The record is silent as to the value of the shoes, briefcase, camera, wallet or keys. Thus, only the stolen automobile could support an instruction on receiving and concealing. As plaintiff correctly points out, however, only if the automobile was inside the victim's home could the charge of breaking and entering include the car. The instruction was properly denied.

Finally, defendant challenges his sentence of from 25 to 150 years for first-degree csc. Defendant argues that the sentence imposed exceeded the sentencing guidelines and should shock the conscience of this Court. The guidelines range for defendant's csc conviction was apparently from 8

to 15 years. In appropriate cases, however, it is within the sentencing judge's discretion to exceed the guidelines, *People v Kenneth Johnson,* 144 Mich App 125, 136-137; 373 NW2d 263 (1985), lv den 424 Mich 854 (1985); *People v Butts,* 144 Mich App 637; 376 NW2d 176 (1985), lv den 424 Mich 860 (1985). The trial judge's discretion is limited by the standard set forth in *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), that the sentence imposed must not shock the conscience of this Court.

Defendant's sentence does not shock our conscience. The victim was sexually assaulted and robbed in her home. The trial court properly observed the serious nature of this crime and the fact that the victim suffered a great deal of emotional upheaval as a result. We summarily reject defendant's suggestions that the assault was somehow less abhorrent because it was accomplished by penetration with his fingers rather than his sexual organ, because it "lasted for only a period of three to four minutes," or because her clothing was not cut. We also reject defendant's contention that the court relied on allegations in the presentence report of a prior rape for which defendant was never formally charged. Defendant did not object to the information in the report at sentencing, and there is no indication in the record that the court relied on the challenged information in rendering his sentence. We find no abuse of discretion.

Affirmed.